# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| KYM HOLLEY, *Plaintiff*, v. GEORGIA DEPARTMENT OF CORRECTIONS, *Defendant*. | CIVIL ACTION NO. 5:19-cv-00032-TES |

## ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

In its Motion for Summary Judgment [Doc. 40], Defendant Georgia Department of Corrections ("DOC") contends that Plaintiff's race discrimination claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983 are due to be dismissed.[1] The matter concerns the DOC's hiring policies, criminal background checks, and Plaintiff's allegations that he was treated differently and more harshly for his probationary history than the white candidate ultimately hired. Simply put, while Plaintiff shows a sloppy and imperfect hiring process, he fails to provide a valid comparator or any other evidence sufficient to support an inference of race discrimination. As explained in

---

[1] Plaintiff does not contest Defendant's Motion on his claim for race discrimination based on § 1983. [Doc. 51, p. 3 n. 1]. After reviewing the record, the Court agrees and concludes that Defendant is entitled to summary judgment on Plaintiff's § 1983 claim.

greater detail below, the Court **GRANTS** Defendant's Motion for Summary Judgment [Doc. 40].

## FACTUAL BACKGROUND

A. **Plaintiff's Job Rescission**

In the summer of 2016, Plaintiff—who is black—was interviewed by Warden Benjamin Ford and at least conditionally offered an "Instructor 2" teaching position at the Burruss Correctional Training Center in Forsyth, Georgia. [Doc. 44-24]; [Doc. 45, Holley Depo., pp. 76:6—11, 82:3—13, 102:1—12, 106:1—25]; [Doc. 45-10, p. 3]. However, Ford lacked the final hiring authority because he would soon be transferred to another facility.[2] [Doc. 42-3, p. 1]; [Doc. 42, Ford Depo., p. 25:11—20]. Hence, the incoming warden, James Payne, needed to approve Plaintiff's employment. [*Id*].

As part of DOC's hiring process, Wardens Ford and Payne instructed Human Resources Personnel Manager Gail Holder to perform background and reference checks on applicants. [Doc. 44, Holder Depo., pp. 56:6—57:22]. Consequently, DOC obtained a copy of Plaintiff's criminal history report from the Georgia Crime Information Center ("GCIC report"). [*Id.*, p. 140:6—15]; [Doc. 48, p. 3]. Plaintiff's GCIC report reflected that in 1992, he pled nolo contendere to a charge of "fleeing or attempting to elude a police officer" and had been sentenced to 10 days in jail, a $985 fine, and 5 months of

---

[2] On July 1, 2016, DOC indeed reassigned Ford to Calhoun State Prison and replaced him at Burruss with Payne. [Doc. 42, Ford Depo. p. 31:21—24]; [Doc. 46, Payne Depo., pp. 10:23—11:6].

2

probation. [*Id.*, pp. 7—8]; [Doc. 48, Holley Depo., p. 159:19—24]; [Doc. 45-17]. After reviewing Plaintiff's GCIC report, Payne decided not to move forward with Plaintiff's offer of employment. [Doc. 46, Payne Depo., pp. 28:2—30:15].

Here is where it got sloppy. Based on Payne's decision, Holder called Plaintiff to inform him that she was rescinding his employment offer because he had previously been sentenced to probation. [Doc. 45, Holley Depo., pp. 167:17—168:5]. When Plaintiff informed Holder that he had never been on probation, Holder told him, "Well, Mr. Holley, I'm rescinding the offer. You can't have probation." [*Id.*] Plaintiff was not provided an opportunity to challenge the contents of the GCIC report and refute the listed probation record in apparent violation of DOC's rules.³ [*Id.*, p. 169:8—18]; [Doc. 44, Holder Depo., pp. 101:18—102:12]; [Doc. 44-18, p. 6].

In 2016, DOC had no written policy, protocol, or directive that specifically prohibited hiring individuals with probation on their record. [Doc. 44, Holder Depo., pp. 105:17-106:02, 137:12—15]; [Doc. 46, Payne Depo., p. 25:12—22]; [Doc. 46-2]; [Doc. 46-5]; [Doc. 46-6]. But, Payne, Ford, and Holder each knew of a leadership directive regarding not hiring individuals who had been on probation. [Doc. 42-3, p 2]; [Doc. 46, Payne Depo., pp. 25:23—26:2]; [Doc. 46-4, p. 2]; [Doc. 44, Holder Depo., pp. 95:7—96:25];

---

³ The Rules of the State Personnel Board followed by DOC provide that if the agency intends to not hire someone because of their criminal background check, the agency is required to provide the applicant with (1) the criminal history report, (2) a disclaimer of applicants rights under the Fair Credit Reporting Act, and (3) notice that the background report may prevent employment. [Doc. 44-18, p. 6]. The rules also provide that agencies are supposed to allow an applicant an opportunity to discuss the results before making an employment decision. [*Id.*].

[Doc. 40-4, Payne Aff., ¶ 4].

>    B.    **Hiring Comparator Despite Probationary History**

After rescinding the offer made to Plaintiff, in August 2016, DOC reposted the position and ultimately hired Georgia Ann Franklin, who is white, for the Instructor 2 position. [Doc. 44, Holder Depo., p. 135:18—21; [Doc. 43, Franklin Depo., p. 11:1—4]. Franklin previously worked part-time for the DOC at Burress. [*Id.*].

However, Franklin also had a disclosed probationary history. In 2007, Franklin had been sentenced to two years on probation, a $3,000 fine, and 40 hours of community service for Inhumane Treatment of Animals in violation of a Butts County Animal Control Ordinance. [*Id.,* pp. 35:20—37:24]; [Doc. 43-1, p. 32]. Franklin first disclosed her probation to DOC on or about April 21, 2007. [Doc. 43, Franklin Depo., p. 64:9—17]; [Doc. 43-3].

But Payne unequivocally claims—and Plaintiff does not contest—that he did not know about Franklin's probationary history when he hired her. [Doc. 51-1, ¶ 32]; [Doc. 40-4, Payne Aff., ¶ 16]; [Doc. 46, Payne Depo., pp 38:13—41:6, 43:24—44:24]. Payne only reviewed Plaintiff and Franklin's GCIC and fingerprint results—and for whatever reason, Franklin's probationary history was not listed on these reports. [*Id.*]; [Doc. 40-4, Payne Aff., ¶ 13]; [Doc. 51-1, ¶ 33]. However, Payne did know that Franklin had also been arrested in 1992 and charged with marijuana possession and driving under the influence ("DUI") based on her fingerprint results. [Doc. 43, Franklin Depo., pp. 27:9—

4

29:4]; [Doc. 40-4, Payne Aff., ¶ 14]. But those charges had been expunged, which could explain why they didn't show up on her GCIC report. [*Id*.]. And, Holder knew that Franklin had previously been sentenced to probation because Franklin disclosed the information on two forms completed on August 8, 2016: DOC Criminal/Driver History Consent Form and State of Georgia Loyalty Oath/State Security Questionnaire. [Doc. 43, Franklin Depo., pp. 64:21—65:14]; [Doc. 43-1, pp. 20—21]; [Doc. 43-4]; [Doc. 44, Holder Depo., p. 61:20—25]; [Doc. 46, Payne Depo., pp. 37:13—39:3]; [Doc. 46-1, p. 63]; [Doc. 40-5, Holder Decl., ¶¶ 11, 15]. Nonetheless, Payne hired Franklin on August 9, 2016, effective August 16, 2016. [Doc. 46, Payne Depo., pp. 37:13—39:3]; [Doc. 46-1, p. 63].

Although Holder knew Payne's position on hiring individuals with a probationary history, she did not tell Payne that Franklin had a probated sentence on her record. [Doc. 40-5, Holder Decl. ¶ 15]; [Doc. 40-4, Payne Aff., ¶¶ 16—17]; [Doc. 44, Holder Depo., pp. 110:13—111:1]; [Doc. 44-14, p. 2]. Until Plaintiff filed this suit, Payne did not know that Franklin had served on probation. [Doc. 40-4, Payne Aff., ¶¶ 16—17].

The information Payne received regarding Plaintiff and Franklin's respective criminal histories came from Holder. [Doc. 46, Payne Depo., pp. 29:21—30:2; 43:20—44:7]; [Doc. 44, Holder Depo., pp. 126:20—22]; [Doc. 40-4, Payne Aff., ¶¶ 12, 16—17]; [Doc. 40-5, Holder Decl., ¶ 14]. As Personnel Manager, Holder oversaw the hiring process for both Plaintiff and Franklin. [Doc. 44, Holder Depo., pp. 44:7--45:4]; [Doc. 40-

5

5, Holder Decl. ¶¶ 4, 20]; [Doc. 46, Payne Depo., p. 17:3—14].

## DISCUSSION

### A.     Standard of Review

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, " 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[4] "When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim[]' in order to discharge this 'initial responsibility.' " *Four Parcels of Real Prop.*, 941 F.2d at 1437–38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

---

[4] Courts may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

Rather, "the moving party simply may show—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* (cleaned up). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

The burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp.*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Anderson*, 477 U.S. at 255. Stated differently, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "The evidence of the [nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### B.     Title VII

Plaintiff brings his case pursuant to Title VII, which makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019) (quoting 42 U.S.C. § 2000e-2(a)(1)). "The language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate . . . discriminatory practices and devices" used to disadvantage racial, gender, and religious minorities in the employment context. *Lewis*, 918 F.3d at 1220 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973)).

When, as here, a plaintiff faces a defendant's motion for summary judgment on claims for race discrimination under Title VII, he must make a sufficient factual showing to permit a reasonable jury to rule in his favor. *Lewis*, 918 F.3d at 1220. While this can be done in a variety of ways, perhaps the most familiar is the three-part burden-shifting framework established by the Supreme Court in *McDonnell Douglas*, 411 U.S. at 800–02. The *McDonnell Douglas* framework places the initial burden on a plaintiff to establish a prima facie case of race discrimination by proving that he was treated differently from some other "similarly situated" individual or "comparator." *Lewis*, 918 F.3d at 1217 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258–59

(1981)). Another way is to "demonstrate a 'convincing mosaic' of circumstantial evidence that warrants the inference of discrimination." *Id.* at n. 6 (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2001)).

As for the *McDonnell Douglas* route, a plaintiff bears the initial burden of establishing a prima facie case of intentional discrimination. *Lewis*, 918 F.3d at 1220. This burden can be met "by showing (1) that [he] belongs to a protected class, (2) that [he] was subjected to an adverse employment action, (3) that [he] was qualified to perform the job in question, and (4) that [his] employer treated 'similarly situated' employees outside [his] class more favorably." *Id.* at 1220–21 (citation omitted). If a plaintiff succeeds in making a prima facie case, "the burden [then] shifts to [a] defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221 (citing *Burdine*, 450 U.S. at 253). Then, if a defendant makes such an articulation, the burden shifts back to a plaintiff who must demonstrate that the proffered, nondiscriminatory reason was "merely a pretext for unlawful discrimination, an obligation that 'merges with [a] [plaintiff's] ultimate burden of persuading the [factfinder] that [he] has been the victim of intentional discrimination.'" *Lewis*, 918 F.3d at 1221 (quoting *Burdine*, 450 U.S. at 256) (second and third alterations in original).

### C.   Comparator Analysis

Here, Defendant narrows the issues before the Court by conceding that Plaintiff (1) is a member of a protected class, (2) suffered an adverse employment action by

having his job offer rescinded, and (3) was qualified to do the job. [Doc. 40-1, p. 7]. Thus, the Court need only determine if Plaintiff and his comparator are similar in all material respects.

"[D]iscrimination," first and foremost, "consists of *treating like cases differently*[,]" and, if this is true, the converse must also be true: "Treating *different* cases differently is not discriminatory, let alone intentionally so." *Lewis*, 918 F.3d at 1222–23 (emphasis supplied) (first citing *N.L.R.B. v. Collier*, 553 F.2d 425, 428 (5th Cir. 1977) and then citing *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1186 (11th Cir. 1984)). Thus, the first burden of *McDonnell Douglas* essentially calls upon a plaintiff to show that he "was treated *differently* from another 'similarly situated' individual" — or, a comparator. *Lewis*, 918 F.3d at 1217 (citing *Burdine*, 450 U.S. at 258–59) (emphasis added).

*Lewis* reiterates that the procedural timing of the comparator analysis, "must be conducted at the prima facie stage of *McDonnel Douglas*'s burden-shifting framework." *Lewis*, 918 F.3d at 1218–24. However, in *Lewis*, the Eleventh Circuit Court of Appeals also definitively answered "[t]he obvious question: Just how 'similarly situated' must a plaintiff and h[is] comparator(s) be?" *Id.* at 1217. In cases like this one, "a plaintiff must show that [he] and h[is] comparator[] are 'similarly situated in all material respects." *Id.* at 1224. "[A] plaintiff and [his] comparators must be sufficiently similar, in an objective sense, that they cannot reasonably be distinguished." *Id.* at 1227. Specifically, in *Lewis*, the Eleventh Circuit Court of Appeals stated the following principles:

10

> (1) a plaintiff does not have to prove "that [he] and [his] comparators are identical save for their race or gender;" and (2) it is not necessary that a plaintiff and [his] comparators have "precisely the same [job] title[s]" or functions. However, ordinarily, a valid comparator: (a) "will have engaged in the same basic conduct (or misconduct) as the plaintiff;" (b) "will have been subject to the same employment policy, guideline, or rule as the plaintiff;" (c) will have been "under the jurisdiction of the same supervisor as the plaintiff," but not invariably so; and (d) "will share the plaintiff's employment or disciplinary history."

*Johnson v. Miami-Dade Cty*, 948 F.3d 1318, 1327 n. 7 (11th Cir. 2020) (citing *Lewis*, 918 F.3d at 1227–29) (citations omitted). "[I]f a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1277 (11th Cir.2008) (emphasis omitted). Furthermore, "proffered comparators' actions are only relevant if the plaintiff shows that the decisionmaker knew of the prior similar acts and did not discipline the rule violators." *Lee v. U.S. Steel Corp.*, 450 F. App'x 834, 839 (11th Cir. 2012).

Here, Plaintiff has provided a comparator that could be similar in all material respects. For example, Plaintiff and his comparator were both subject to the same (potential) employer and the same employment policy—a prohibition from Payne and DOC leadership on hiring individuals with a probationary record. Further, both individuals had a probation history on their criminal records.

However, and this is critical, Plaintiff has not produced any evidence to show that Payne actually knew of Franklin's probationary history when he decided to hire

11

her. [Doc. 40-4, Payne Aff., ¶13]; [Doc. 51-1, ¶ 33]; [Doc. 40-4, Payne Aff., ¶16]. [Doc. 51-1, ¶ 32]. Since Payne didn't know about Franklin's probationary history when he made the hiring decision, it follows that Payne, the decisionmaker, did not treat similarly situated candidates differently. Rather, the record shows that, when Payne made his decision, he had information showing one candidate with a probation record and one without. Thus, the two candidates were *different* and treating different people differently cannot show race discrimination.

Accordingly, Plaintiff has not produced evidence necessary to make a prima facie case for race discrimination under Title VII.[5] *See Boone v. City of McDonough*, No. 1:12–cv–1036–WSD, 2013 WL 4670480, at *21 (N.D. Ga. 2013) (collecting cases holding summary judgment was warranted on plaintiffs' claim where they failed to point to any similarly situated comparator).

D.    **Cat's Paw Analysis**

Plaintiff also argues that DOC could still be liable because "Holder used Payne 'as a mere conduit, or cat's paw, to give effect to [her] discriminatory animus" since Holder knew before Payne approved Franklin's hire that Franklin had previously been sentenced to probation but chose not to notify Payne. [Doc. 51, pp. 8—9]. Thus, Plaintiff

---

[5] The Court is also unpersuaded by the fact that —while Payne was not aware of Franklin's probationary history—he still knew about Franklin's expunged charges for possession of marijuana and DUI in 1992. [Doc. 51, p. 11]; [Doc. 40-4, Payne Aff., ¶14]. In terms of *Lewis*, a comparator is not similar in all material respects where the comparator has expunged charges and the prospective plaintiff does not. This is especially true because state laws generally provide that only minor (or what the legislature determines to be less serious) crimes can be expunged in the first place.

argues, "Holder put her fingers on the scale" by being biased about which information she provided to Payne. [*Id.*, p. 9]. Further, Plaintiff contends that "Holder denied Mr. Holley an opportunity to contest his GCIC report in violation of established DOC rules[;]" thus, allowing Payne to rely on information that Plaintiff could've proven was inaccurate. [*Id.*].

A plaintiff may use the so-called "cat's paw" theory to prove that the discriminatory animus behind the delivery of information to the supervisor caused his job to be rescinded.[6] *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999). "This theory provides that causation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee." *Id*. In other words, "the recommender [uses] the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus." *Id.*; *see also Llampallas v. Mini–Circuits, Lab, Inc.,* 163 F.3d 1236, 1249 (11th Cir. 1998) ("In a cat's paw situation, the harasser clearly causes the tangible employment action, regardless of which individual actually signs the employee's walking papers"); *Crawford v. Carroll*, 529 F.3d 961, 979 n. 21 (11th Cir.2008) (noting that the evidence in the record must support "the contention that [the

---

[6] "Although the Eleventh Circuit has not ruled in a published opinion that the cat's paw theory applies to Title VII and § 1981 retaliation claims, the Court's holding in *Sims* that the theory applies to the ADEA but-for causation regime forecloses any divergence." *Moore v. Delta Airlines Inc.*, No. 5:18-cv-00485-HNJ, 2020 WL 230978, at *19 (N.D. Ala. Jan. 15, 2020) (citing *Sims v. MVM, Inc.*, 704 F.3d 1327, 1336 (11th Cir. 2013)); *see also Quintero v. Publix Super Markets, Inc.*, No. 18-cv-21615-GAYLES, 2020 WL 607117, *1—2 (S.D. Fla. Feb. 7, 2020)

13

subordinate supervisor] exercised undue influence over [the decisionmaker]" in order to succeed under the cat's paw theory).

Holder's relevant role in the hiring process is to provide Payne with the necessary paperwork for him to decide who to hire. Holder does not have the authority to terminate or rescind job offers. [Doc. 44, Holder Depo., pp. 47:24—48:6]. Further, Holder never explicitly recommended that Payne revoke Plaintiff's offer or hire Franklin. Instead, Holder provided the requested forms, and Payne independently decided to rescind Plaintiff's job offer after reviewing his GCIC and fingerprint results. Plaintiff presents no evidence that refutes this. Accordingly, Plaintiff's contention that DOC can be liable for Holder's refusal to share information fails because the decisionmaker—Payne—conducted an independent investigation and did not even seek Holder's recommendation on who to hire, let alone follow it blindly.

Further, DOC cannot be liable for race discrimination because Holder did not allow Plaintiff an opportunity to contest his GCIC results. Simply put, Plaintiff has not shown a causal link between Holder refusing Plaintiff the chance to contest his GCIC results and Payne not hiring Plaintiff. Critically, Payne had already decided to rescind Plaintiff's job offer when Holder declined to allow Plaintiff an opportunity to dispute the results. [Doc. 46, Payne Depo., pp. 28:2—30:15]. Further, Plaintiff still lacks a valid comparator or any evidence of racial animus for Holder's refusal to permit Plaintiff to respond to his GCIC report.

Simply put, the Plaintiff failed to show that Holder harbored racial animus and then manipulated Payne in order to carry out a plot to ensure that Plaintiff would not get the job. The cat's paw theory just doesn't work in this case.

E.    **Convincing Mosaic of Race Discrimination**

Finally, Plaintiff has not shown a convincing mosaic of race discrimination. "A plaintiff can still survive summary judgment if [he] 'presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.' " *Moultrie v. Ga. Dep't of Corr.*, 703 F. App'x 900, 907 (11th Cir. 2017) (citing *Smith,* 644 F.3d at 1328).

"A 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis*, 934 F.3d at 1185.

But Plaintiff has not shown a motive to discriminate, incidents of white and black employees being treated differently, or the employer's conscious tracking of race in disciplinary or hiring decisions. *See Moultrie,* 703 F. App'x at 907. Instead, Plaintiff attempts to rely on the pretext arguments he offered in the *McDonnell Douglas* portion of his argument to construct a convincing mosaic. Because Plaintiff failed to show a

valid comparator under the *McDonnell Douglas* framework, the Court has not yet addressed those arguments. [Doc. 51, pp. 19—20].

As Plaintiff has no evidence of implicit bias, Plaintiff argues racial bias is indisputable because Defendant's proffered reasons for hiring Franklin over Plaintiff are clearly pretextual. *[Id.,* p. 14]. Because it is "axiomatic" that courts "cannot second-guess the business decisions of an employer," a plaintiff who seeks to show pretext through implausibility faces a high burden. *Cotton v. Enmarket, Inc.*, No. 19-14000, 2020 WL 2078288, at *2 (11th Cir. 2020) (quoting *Rowell v. BellSouth Corp.*, 433 F.3d 794, 798 (11th Cir. 2005)). "An employer who fires [or rescinds a job offer from] an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Damon v. Fleming Supermarkets of Fla.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999). Indeed, an employer has the "right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." *Williams v. Fla. Atlantic Univ.*, 728 F.App'x 996, 999 (11th Cir. 2018) (citing *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) abrogated in part on other grounds by *Lewis*, 918 F.3d at 1218). In the end, an "employer may fire [or rescind a job offer to] an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Id.*

Payne's proffered legitimate nondiscriminatory business reasons for hiring Franklin over Plaintiff were (1) Plaintiff's prior probationary history (based on a

16

directive from DOC leadership), and (2) that Plaintiff's criminal history "was not in line with the high standards of professionalism and integrity" that Payne expected from his employees. [Doc. 40-1, pp. 13—14].

None of Plaintiff's pretext arguments show that Payne's reasoning was untrue. Plaintiff essentially argues that (1) DOC had no expressed policy barring individuals with probation from being hired, (2) Plaintiff had a final offer from Ford, after he viewed his GCIC report, that was not conditional, (3) Holder and Payne deviated from established DOC policy when they did not notify Plaintiff in writing of the reasons for the job rescission and provide Plaintiff an opportunity to respond to the GCIC report, (4) Holder unduly influenced Plaintiff's job offer being rescinded, and (5) Holder intentionally only relayed Plaintiff's probation history to Payne. [Doc. 51, pp. 13—19]. None of these arguments refute Payne's rationale for not hiring Plaintiff.

Even if there was not an express or formal policy, Payne still retained the discretion to not hire individuals because of their criminal history, even if he was mistaken in believing they had been on probation. *See Williams* 728 F.App'x at 999. Further, even if the previous warden, Ford, viewed Plaintiff's GCIC report and chose to still move forward with his application, different supervisors are permitted to interpret the rules differently. *See Rojas v. Florida*, 285 F.3d 1339, 1342—43 (11th Cir. 2002) (cautioning that courts "must be careful not to allow Title VII plaintiffs simply to litigate whether they are, in fact, good employees [or hires]" and noting that different

supervisors are permitted to impose different evaluation standards). Further, Plaintiff has offered nothing to demonstrate that the DOC was bound to hire him based on Ford's offer. If he had such evidence, he surely would have brought a breach of contract claim, ostensibly a much easier claim to win on than Title VII. Additionally, as explained above, Holder's alleged racial animus cannot be imputed to the decisionmaker because Payne acted independently of her in deciding to rescind Plaintiff's job offer. Moreover, if Holder was really trying to "put her fingers on the scale" in favor of Franklin, it seems likely that she would have somehow shielded the information about Franklin's 1992 arrest from Payne as well.

Accordingly, Plaintiff fails to introduce sufficient evidence that the probationary record was merely pretext, as opposed to racial animus, for rescinding Plaintiff's job offer. Thus, the Court cannot say that "no reasonable person, in the exercise of impartial judgment" would have decided to revoke Plaintiff's job offer. *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007).

Absent a genuine dispute of fact whether the stated grounds for his job recession were pretextual, Plaintiff cannot rely on the convincing mosaic standard to avoid summary judgment. *Lee v. City of Walthourville,* No.: 4:18-cv-90, 2020 WL 907862, at *14 n. 11 (S.D. Ga. Feb. 24, 2020) (collecting Eleventh Circuit Court of Appeals cases finding Plaintiff cannot survive summary judgment under the "convincing mosaic" standard by reiterating pretext arguments that the court found insufficient). The Plaintiff has not

convinced the Court that there is a legitimate question as to whether Payne, the decisionmaker, made his decision on anything other than what he believed was accurate information regarding Plaintiff and Franklin's probationary histories. Even though Plaintiff may take issue with Holder's sloppy handling of the requested information and the way she gave it to Payne, he cannot make out a discrimination case against DOC under any of his attempted theories.

## CONCLUSION

Based on all of the foregoing, the Court **GRANTS** Defendant's Motion for Summary Judgment [Doc. 40] and **DIRECTS** the Clerk of Court to enter Judgment accordingly and **CLOSE** this case.

**SO ORDERED**, this 23rd day of May, 2020.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**